**Outten & Golden LLP**
Adam T. Klein
Lewis M. Steel
Rachel Bien
Juno Turner
Reena Arora
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone: (212) 245-1000

**Law Offices of Gregory R. Fidlon, P.C.**
Gregory R. Fidlon
Northpark Town Center
1200 Abernathy Road
Bldg. 600, Suite 1700
Atlanta, GA 30328
Telephone: (770) 807-0083

### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **JASON SILVERSTEIN and JENNIFER STAMATELOS,** individually and on behalf of others similarly situated,<br><br>      Plaintiffs,<br><br> v.<br><br>**ALLIANCEBERNSTEIN L.P.,**<br><br>      Defendant. | 09-CV-5904 (JPO) |

**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT...................................................................................................................................1

    I.      APMs' Primary Duties Do Not Relate to AB's Management or General Business Operations ...................................................................................................................1

          A.      APMs Provide the Core Service AB Sells to Its Customers.........................1

          B.      Defendant Misinterprets the Regulatory Example Relating to Financial Industry Employees ......................................................................................2

    II.     APMs' Primary Duty Does Not Involve the Exercise of Discretion and Independent Judgment ..............................................................................................5

          A.      AB's Rules and Procedures Eliminate the Exercise of any Meaningful Discretion and Independent Judgment by APMs..........................................5

          B.      AB Ignores Plaintiffs' Consistent Testimony About Their Duties..............6

          C.      AB Misinterprets the DOL Regulation on the Use of Guidelines and Procedures....................................................................................................6

          D.      AB's Reliance on 29 C.F.R. § 541.202(c) Is Unavailing ............................7

          E.      AB Mischaracterizes the Evidence in Its Attempt to Align APMs' Duties to Those Enumerated in 29 C.F.R. § 541.202(b) ..........................................8

CONCLUSION.............................................................................................................................10

## **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Asp v. Milardo Photography, Inc.*,
   573 F. Supp. 2d 677 (D. Conn. 2008) ...................................................................................5

*Bollinger v. Residential Capital, LLC*,
   No. C10-01123, 2012 WL 1945033 (W.D. Wash. May 30, 2012) ...........................................4

*Davis v. J.P. Morgan Chase & Co.*,
   587 F.3d 529 (2d Cir. 2009) ...........................................................................................1, 2, 3

*Hendricks v. J.P. Morgan Chase Bank, N.A.*,
   677 F. Supp. 2d 544 (D. Conn. 2009) ...................................................................................3

*McKinney v. United Stor-All Ctrs. LLC*,
   656 F. Supp. 2d 114 (D.D.C. 2009) .......................................................................................5

**OTHER AUTHORITIES**

29 C.F.R. § 541.200(a) ..............................................................................................................2

29 C.F.R. § 541.202 .......................................................................................................7, 9, 10

29 C.F.R. § 541.203(b) ........................................................................................................2, 6

29 C.F.R. § 541.700(a) ..............................................................................................................2

29 C.F.R. § 541.704 ..................................................................................................................7

Loc. Civ. R. 56.1(c) ...............................................................................................................5, 8

Opinion Letter, United States Dep't of Labor, 2001 WL 1558764 (Feb. 16, 2001) .........................4

## PRELIMINARY STATEMENT

Defendant AllianceBernstein ("AB") has failed to carry its burden of proving that Plaintiffs' primary duty consists of exempt administrative work. Because Plaintiffs' primary duties neither relate to AB's management or general business operations, nor involve the exercise of discretion and independent judgment, the Court should deny Defendant's motion for summary judgment and grant Plaintiffs' cross motion for summary judgment.

## ARGUMENT

**I.    APMs' Primary Duties Do Not Relate to AB's Management or General Business Operations.**

In order to carry its burden to prove that the administrative exemption applies, AB must establish that Plaintiffs' primary duties relate to its management or general business operations. Defendant has failed to make this showing.[1]

   **A.    APMs Provide the Core Service AB Sells to Its Customers.**

Try as it might, Defendant cannot escape the holding in *Davis v. J.P. Morgan Chase & Co.* – binding precedent in this circuit – that employees outside of an employer's management or general business operations are ineligible for the administrative exemption. 587 F.3d 529, 534-35 (2d Cir. 2009). AB attempts to expand the exemption by arguing that because APMs do not create AB's investment products, they do not fall within the *Davis* rule. Def.'s Mem. in Opp'n to Pls.' Cross-Mot. for Summ. J. and Reply Mem. in Further Supp. of its Mot. for Summ. J., ECF No. 73 ("Def.'s Br.") at 4. But this is not the law. *Davis* makes clear that employees who

---

[1] Defendant requests that the Court strike the testimony of Plaintiffs Winkler, Yau, and Gottlieb because it claims that these individuals do not have viable claims under the Fair Labor Standards Act ("FLSA"). *See* Def.'s Resp. to Pls.' Resp. to Def.'s Statement of Undisputed Material Facts and Statement of Additional Undisputed Material Facts in Supp. of its Mot. for Summ. J. Pursuant to Local Civil Rule 56.1 ("SOF") ¶ 101 n. 2. There is no basis for such a request. Even if Defendant is correct that these individuals do not have FLSA claims, their testimony is relevant to the duties of APMs employed by AB.

participate in the production of the product or service that forms the core of the employer's business are not covered by the administrative exemption. *Id.* at 534 ("[underwriters'] work is not related either to setting 'management policies' nor to 'general business operations' such as human relations or advertising . . . but rather concerns the 'production' of loans – the fundamental *service* provided by the bank.") (citations omitted) (emphasis added).

Here, the parties agree that APMs are involved in the day to day tasks relating to implementation of AB's investment strategies. SOF ¶ 122. AB insists that because Plaintiffs do not create those strategies, they are not "production" workers. But this argument defies logic. AB's investment strategies would be of no use to its clients were they not implemented in their accounts – the precise duty APMs perform.

AB attempts to limit the rule of *Davis* by arguing that all employees participate "to some degree" in the employer's production work, and that therefore – in its view – APMs fall within the exemption. Def.'s Br. at 7. Even if this were true, only employees whose primary duty consists of administrative work fall within the exemption. *See* 29 C.F.R. §§ 541.200(a); 541.700(a). However, courts draw lines between those employees whose primary duties render them truly exempt administrators – accountants, human resources personnel, marketing staff, to name a few – and those whose primary duties are production and, therefore, fall outside the exemption. *Davis*, 587 F.3d at 534-35 (concluding that because the plaintiff's duties were "not related either to setting management policies nor to general business operations such as human relations or advertising," he was not an exempt employee) (internal quotation marks omitted).

      B.    **Defendant Misinterprets the Regulatory Example Relating to Financial Industry Employees.**

Defendant relies heavily on an example contained in 29 C.F.R. § 541.203(b) in support of its argument that APMs are exempt. Def.'s Br. at 4-5. As an initial matter, the Department of

Labor ("DOL") has made clear that the regulatory example is not an independent exemption test. Decl. of Juno Turner in Opp'n to Def.'s Mot. for Summ. J. and In Supp. of Pls.' Cross Mot. for Summ. J., ECF. No. 70 ("Turner Decl.") Ex. 43 (Administrator's Interpretation No. 2010-1) at 8. Rather, it is merely intended to illustrate the distinction between employees whose primary duty relates to "the management or general operations of the employer's customers and those whose primary duty is selling the employer's financial products." *Id.* The employer must still establish each element of the exemption – which AB has failed to do. *See id.*

Relying on 29 C.F.R. § 541.203(b), AB attempts to expand the exemption to include all financial industry employees other than those whose primary duty involves selling financial products. *See* Def.'s Br. at 5. Again, AB ignores the analysis in *Davis*. The *Davis* court focused on the "selling financial products" language of the regulation because the parties agreed that the plaintiff's primary duty was to sell loan products. *See Davis*, 587 F.3d at 534. But that focus does not mean that the only non-exempt employees in the financial industry are those who sell financial products. Rather, the administrative exemption applies only to those employees who "perform[] substantial and independent financial work." *Id.* at 533. Such work includes "advisory duties" such as "advis[ing] customers as to what loan products best met their needs and abilities." *Id.* at 534. Non-exempt work, on the other hand, is "functional rather than conceptual." *Id.* at 535.

The distinction drawn in *Davis* has been followed by district courts applying its holding to employees in the financial services industry. In *Hendricks v. J.P. Morgan Chase Bank, N.A.*, the court focused not on whether the employees at issue, who performed accounting services for hedge fund clients, sold financial products, but on the "relationship of the employee's position to the 'primary output' of the business in which the employee works." 677 F. Supp. 2d 544, 558

3

(D. Conn. 2009) (quoting *Davis*, 537 F.3d at 535).  Similarly, the court in *Bollinger v. Residential Capital, LLC* noted that exempt financial services work "boils down to sophisticated analysis and targeted advice and marketing" and concluded that "exempt administrative work is about running a business, not implementing its day-to-day operations."  No. C10-01123, 2012 WL 1945033, at *6 (W.D. Wash. May 30, 2012).[2]

AB points to the DOL's 2001 Opinion Letter, cited in *Davis*, in support of its arguments and asserts that APMs' duties are akin to those of the individuals cited therein.  Def.'s Br. at 6.  This argument fails for several reasons.  First, contrary to what Defendant argues, the DOL actually concluded that the employees in question in the 2001 letter should be considered *non-exempt* because they did not exercise the requisite discretion and independent judgment, but merely used their skill and knowledge to apply techniques, procedures, and/or specific standards.  Opinion Letter, United States Dep't of Labor, 2001 WL 1558764 (Feb. 16, 2001).  Second, the 2001 letter has since been repealed as inconsistent with the analysis contained in the DOL's recent Administrator's Interpretation regarding the "directly related" prong of the exemption.  Turner Decl. Ex. 43 (Administrator's Interpretation No. 2010-1) at 8.  And most importantly, even if the 2001 letter's analysis were correct, the duties of the employees it examined are markedly different from those of APMs – Defendant's unsupported assertions to the contrary notwithstanding.  Rather, Defendant concedes that decisions about investment strategy and which securities clients should hold in their portfolios are the responsibility of other AB

---

[2]  Defendant cites the *Bollinger* court's observation that the *Davis* court's analysis was "flawed." Def.'s Br. at 6 n.4.  But equally important was the *Bollinger* court's subsequent analysis – omitted by Defendant – that even if the administrative/production dichotomy is not viewed as dispositive, the current DOL regulations distinguish between "work that any employer needs performed – such as accounting, human resources, and regulatory compliance – and work that is particular to an employer's industry.  The former is part and parcel of running a business and therefore exempt administrative work.  The latter is not."  *Bollinger*, 2012 WL 1945033, at *6 (citation omitted).

employees, not APMs.  SOF ¶¶ 112, 113, 115, 118, 119, 124, 125.  APMs spend the vast majority of their time on the tasks needed to implement AB's investment strategies.[3]  SOF ¶ 122.

## II. APMs' Primary Duty Does Not Involve the Exercise of Discretion and Independent Judgment.

### A. AB's Rules and Procedures Eliminate the Exercise of any Meaningful Discretion and Independent Judgment by APMs.

In arguing that APMs' primary duties involve the exercise of discretion and independent judgment, AB ignores the fact that, to the extent APMs make decisions at all, they do so within a strict framework established by AB.  APMs discuss and receive approval from their managers for any deviations from AB's targets and procedures.  SOF ¶¶ 184,[4] 186.[5]  Decisions as to matters of significance are made by more senior AB employees.  SOF ¶¶ 112, 113, 115, 118, 119, 124, 125.  AB does not dispute that Research Analysts, not APMs, are responsible for recommending the securities included in AB's investment products.  SOF ¶ 112.  Nor does it dispute that APMs do not set the targets for the amounts of each security that is held in AB's investment products.  SOF ¶ 115.  Portfolio Managers – not APMs – are responsible for recommending investment strategies to AB's clients.  SOF ¶ 113.  APMs do not choose the securities held in client accounts, nor do they make investment decisions for clients.  SOF ¶¶ 118, 119.  APMs merely check whether the recommended trades conflict with the parameters set by others.  SOF ¶¶ 124, 125.

---

[3] AB concedes that APMs are "deeply involved" in customer service, but in doing so ignores the many cases that hold that customer service is not exempt work.  *See, e.g.*, *Asp v. Milardo Photography, Inc.*, 573 F. Supp. 2d 677, 689-90 (D. Conn. 2008) ("customer service" is non-administrative); *McKinney v. United Stor-All Ctrs. LLC*, 656 F. Supp. 2d 114, 124 (D.D.C. 2009) (listing customer service among list of non-exempt tasks "unrelated to management or general business operations").

[4] Defendant fails to cite any evidence in disputing this statement of fact.  It should therefore be deemed admitted.  Loc. Civ. R. 56.1(c).

[5] AB argues that it "depends on APMs . . . to make decisions that the software programs cannot" – but cites no evidence whatsoever in support of this contention.  *See* Def.'s Br. at 9.

Moreover, it is precisely the duties performed by other, non-APM employees at AB – making investment recommendations to clients, determining which securities to hold and in what percentage, and the like – which correlate with the examples of exempt duties contained in the DOL regulation. *See* 29 C.F.R. § 541.203(b) (exempt duties include "work such as collecting and analyzing information regarding the customer's income, assets, investments or debts; determining which financial products best meet the customer's needs and financial circumstances; advising the customer regarding the advantages and disadvantages of different financial products; and marketing, servicing or promoting the employer's financial products"). Because AB admits that APMs perform none of this work, the exemption cannot apply to them.

### B. AB Ignores Plaintiffs' Consistent Testimony About Their Duties.

AB's argument that certain Plaintiffs allegedly may have failed to perform to its expectations, Def.'s Br. at 11, is unavailing. In relying on the performance appraisals of a single Plaintiff, Jason Silverstein, AB ignores the reality that several current employees – Plaintiffs Joffe, Bishop, and Friedman – each described their duties in similar terms. *See* Pls. Resp. to Def.'s Statement of Undisputed Material Facts ("Pls.' SOF") ¶¶ 8, 9, 11. Like Mr. Silverstein, both Mr. Joffe and Mr. Friedman testified that they entered trades consistent with the recommendations of AB's software the vast majority of the time. *See* SOF ¶¶ 181, 183, 194. Mr. Bishop testified that he "basically just checked weights in the portfolio of each stock" and "hit[s] a button" to "optimize" the portfolio and then reviews the trades to "make sure that each stock in the portfolio falls close to the target weight." *Id*. ¶¶ 116, 130.

### C. AB Misinterprets the DOL Regulation on the Use of Guidelines and Procedures.

AB argues that APMs satisfy the administrative exemption despite their heavy reliance on AB's guidelines and procedures in performing their job duties. *See* Def.'s Br. at 12. In doing

so, Defendant omits a crucial part of the regulation, the full text of which makes clear that "employees who simply apply well-established techniques or procedures described in manuals or other sources within closely prescribed limits to determine the correct response to an inquiry or set of circumstances" are not exempt.  29 C.F.R. § 541.704.  In the face of Plaintiffs' detailed and consistent testimony that they followed detailed guidelines, checklists, and procedures – *see* SOF ¶¶ 151,[6] 153 – Defendant cannot point to undisputed facts sufficient to carry its burden on this prong of the exemption test.   Moreover, AB's argument that none of its guidelines materially limit APMs' discretion (Def.'s Br. at 13) directly contradicts the undisputed evidence that APMs' discretion is in fact strictly limited – they are prohibited from deviating from the securities that AB determines should be held in its clients' portfolios.  SOF ¶¶ 118, 119.

### D. AB's Reliance on 29 C.F.R. § 541.202(c) Is Unavailing.

Defendant argues that the DOL regulation stating that employees may exercise discretion and independent judgment even where their decisions are reviewed at a higher level justifies its failure to pay APMs overtime.  Def.'s Br. at 14.  But the examples contained in the regulation demonstrate the fallacy of this argument.  The DOL cites two examples of the type of supervision that will not prevent application of the exemption.  First, "the policies formulated by the credit manager of a large corporation may be subject to review by higher company officials who may approve or disapprove these policies."  29 C.F.R. § 541.202(c).  And second, "[t]he management consultant who has made a study of the operations of a business and who has drawn a proposed change in organization may have the plan reviewed or revised by superiors before it is submitted to the client."  *Id*.  There is no evidence that APMs conduct work akin to these

---

[6]  The evidence AB cites to dispute this statement of fact does not contradict Plaintiffs' contention that they "follow detailed procedures to perform their tasks."  If anything, it shows that Plaintiffs perform their duties "within closely prescribed limits."  29 C.F.R. § 541.704.

7

examples. In fact, the positions set forth in the examples – credit manager and management consultant – offer persuasive evidence of the types of employees that the DOL contemplates falling within the administrative exemption.

Moreover, Plaintiffs testified that they consult frequently with their supervisors. SOF ¶ 185.[7] AB relies on the testimony of Plaintiff Bishop that he did not need his manager's input "for every single cash flow," to suggest that Plaintiffs were not closely supervised. Def.'s Br. at 15. But it stands to reason that employees performing routine work would not need to consult their manager for every task. Rather, they consult their managers prior to deviating from AB's established procedures. SOF ¶ 186.[8]

> E. **AB Mischaracterizes the Evidence in Its Attempt to Align APMs' Duties to Those Enumerated in 29 C.F.R. § 541.202(b).**

AB also mischaracterizes the evidence and exaggerates APMs' duties in order to align them with the factors contained in the DOL regulations. *See* Def.'s Br. at 16. Much of the testimony cited by Defendant refers to work on special projects that are not Plaintiffs' primary duties. *See, e.g.*, Ahrens Decl. Ex. R (Stamatelos Tr.) 144:10-145:10, 230:16-232:8 (occasionally prepared hedge fund reports and updated a spreadsheet, but these tasks were not part of her "normal base responsibilities."); Ex. B (Bishop Tr.) 132:8-12 (self-evaluations

---

[7] AB disputes ¶185 of Plaintiffs' SOF, but in doing so cites testimony that supports Plaintiffs' statement that they regularly receive direction and instructions from their managers. SOF ¶ 185. The testimony cited by Defendant shows that APMs consult with their managers in frequencies ranging from two to three times a day to once or twice a week. *Id.*

[8] AB "objects" to ¶ 186 of Plaintiffs' Rule 56.1 Statement as "vague and ambiguous." SOF ¶ 186. This is an improper response and the statement of fact in ¶ 186 should be deemed admitted. *See* Loc. Civ. R. 56.1(c) ("[e]ach numbered paragraph in the statement of material facts required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party").

"emphasize . . . the things that I did that kind of went above and beyond my day to day tasks."). More importantly, the work Defendant refers to is not the type contemplated by the regulation.

Contrary to Defendant's assertion, APMs do not have the authority to formulate, affect, interpret, or implement management policies or operating practices. *See* 29 C.F.R. § 541.202(b). The evidence cited by Defendant makes clear that APMs merely offer suggestions or provide assistance to improve procedures – a far cry from the discretion contemplated by the regulation. *See* Pls. SOF ¶ 31. Moreover, Defendant attempts to inflate the amount of responsibility APMs have on these projects. Pls. SOF ¶¶ 31, 73. For instance, Plaintiff Joffe testified that he was "involved in testing prior to rolling out a new enhancement of the programs." Ahrens Decl. Ex. H (Joffe Tr.) 172:25-173:3. Mr. Joffe's involvement in this project consisted of making "notes or comments about different features we'd like to use or different alerts or user friendliness and functionality testing." *Id.* 173:6-8. Even if APMs provid occasional feedback to improve management policies, Defendant cites nothing showing that this is their primary duty.

The testimony cited by AB in support of its claim that APMs have the ability to affect business operations to a substantial degree is similarly thin. For example, although AB claims that Plaintiff Ujkic "wrote" procedures and checklists, Ms. Ujkic's testimony makes clear that she simply memorialized existing protocols. Ahrens Decl. Ex. T (Ujkic Tr.) 125:5-16 ("I wouldn't say that I necessarily created the procedures. It's just that I really broke them down and wrote them down for everyone, especially new APMs that would come on board, they'd have an easy reference. ").

In support of its argument that APMs have authority to commit AB in matters that have significant financial impact, Defendant cites testimony relating to APMs' potential to make errors and their need to correct them once the errors are discovered. Def.'s Br. at 17. But this

9

testimony provides a perfect example of the type of work that the DOL has specifically determined is non-exempt:

> An employee does not exercise discretion and independent judgment with respect to matters of significance merely because the employer will experience financial losses if the employee fails to perform the job properly. For example, a messenger who is entrusted with carrying large sums of money does not exercise discretion and independent judgment with respect to matters of significance even though serious consequences may flow from the employee's neglect.

29 C.F.R. § 541.202(f).

Defendant's claim that Plaintiffs have the authority to waive or deviate from established policies and procedures without prior approval is not supported by the cited evidence. *See* Def.'s Br. at 17. Moreover, AB ignores the undisputed fact that the securities and target weights in its clients' accounts were set by AB's investment staff, and that Plaintiffs cannot deviate from them without approval from their managers. SOF ¶ 184.

## CONCLUSION

For the reasons set forth above, as well as in Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment and in Support of Plaintiffs' Cross-Motion for Summary Judgment (ECF No. 72),[9] Plaintiffs respectfully request that the Court deny Defendant's motion for summary judgment and grant Plaintiffs' cross-motion for summary judgment in all respects.

---

[9] Due to page limitations, Plaintiffs omit additional argument in support of their position that they are entitled to recover liquidated damages under the FLSA, that a three-year statute of limitations should apply to their FLSA claims, and that the fluctuating workweek method of calculating damages is inapplicable. Plaintiffs stand on the argument and authorities cited in their moving brief. Pls.' Mem. in Opp. to Def.'s Mot. for Summ. J. and in Supp. of Pls.' Cross-Mot. for Summ. J. (ECF No. 72) at 23-27.

Dated: New York, New York
       July 27, 2012                                   Respectfully submitted,

                                                              By:

                                                 /s/ Adam T. Klein
                                                Adam T. Klein

Adam T. Klein
Lewis M. Steel
Rachel Bien
Juno Turner
Reena Arora
**Outten & Golden LLP**
3 Park Avenue, 29th Floor
New York, NY 10016
Telephone: (212) 245-1000
Facsimile: (212) 977-4005

Gregory R. Fidlon
**Law Offices of Gregory R. Fidlon, P.C.**
Northpark Town Center
1200 Abernathy Road
Bldg. 600, Suite 1700
Atlanta, GA 30328
Telephone: (770)807-0083
Facsimile: (770) 807-0460
Email: greg@fidlonlegal.com

*Attorneys for Plaintiffs*

11

**CERTIFICATE OF SERVICE**

      I hereby certify that on July 27, 2012 a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

      /s/ Adam T. Klein
      Adam T. Klein